IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| BARRY BERMAN, individually and on behalf of all others similarly situated,<br><br>      *Plaintiff*,<br><br>v.<br><br>RESERVEBAR EXPRESS CORP. d/b/a MINIBAR DELIVERY,<br><br>      *Defendant*. | Case No. _____ |

## NOTICE OF REMOVAL

**PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. §§ 1331, 1367, 1441(a) and 1446, with full reservations of all right and defenses, Defendant ReserveBar Express Corp. (hereafter, "Defendant"[1]), hereby respectfully removes the above-entitled civil action, and all claims and causes of action therein, from the Fifteenth Judicial Circuit Court in and for Palm Beach County, Florida, Case No. 50-2022-CA-005114-XXXX-MB, to the United States District Court for the Southern District of Florida. In support of this Notice of Removal, Defendant states as follows:

**I.  Background**

1.  On May 26, 2022, this action was commenced by Barry Berman ("Plaintiff") by the filing of a Complaint alleging purported claims under the federal Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") and its Florida analog, the Florida Telephone Solicitation Act ("FTSA"), in the Fifteenth Judicial Circuit Court in and for Palm Beach County, Florida, Case No. 50-2022-CA-005114-XXXX-MB, entitled *Barry Berman v. ReserveBar*

---

[1] By removing, Defendant does not waive any rights, objections, or arguments in this regard (including but not limited to jurisdictional, liability, and service issues), and does not concede that Defendant is liable in this matter or that it has been properly served.

*Express Corp. d/b/a Minibar Delivery* (hereinafter, the "State Court Action") based on alleged text messages and/or phone calls that Plaintiff purportedly received on his cellular phone without his consent, in violation of the statutes.

2. Per the allegations in the Complaint in the State Court Action—and though Defendant denies those allegations and denies any wrongdoing whatsoever—this suit arises from "approximately thirty-six" purported telephone calls (in the form of text messages) allegedly made to Plaintiff's cellular telephone by Defendant or on behalf of Defendant and/or that Plaintiff otherwise alleges violated the TCPA and FTSA.

3. Pursuant to 28 U.S.C. § 1446(a), a true and correct copy of the operative Complaint in the State Court Action is attached hereto as **Exhibit A**.

4. Pursuant to 28 U.S.C. § 1446(a), true and correct copies of all other process, pleadings, and orders served upon Defendant in the State Court Action are attached to this Notice as **Exhibit B**. A true and correct copy of the Register of Actions from the State Court Action is attached to this Notice as **Exhibit C**.

5. Defendant was purportedly personally served with copies of the Summons and Complaint on July 18, 2022. A true and correct copy of the Return of Service filed in the State Court Action is attached hereto as **Exhibit D**.

6. This Notice of Removal is therefore timely under 28 U.S.C. § 1446(b).

7. As all procedural and substantive requirements related to the removal of this action have been performed or otherwise satisfied, as reflected below, Defendant now timely and respectfully removes the State Court Action to this Court.

II. **Basis for Jurisdiction**

8. This Court has original subject matter jurisdiction of this action pursuant to 28

U.S.C. §§ 1331, 1367, 1441(a) and 1446.  This claim could and should have been originally filed in this Court pursuant to 28 U.S.C. § 1331, as this Court has original jurisdiction over all claims and actions arising under the "Constitution, laws or treaties of the United States."

9. Plaintiff's Complaint asserts alleged violations of a federal law, namely the TCPA.[2] *See generally* Exhibit A, attached.  The Supreme Court of the United States in *Mims v. Arrow Financial Services LLC*, 132 S. Ct. 740, 747-53 (2012), addressed the issue of whether the federal district courts have jurisdiction over TCPA claims, holding that such a claim is, in fact, one that "arises under" the laws of the United States.  As such, this Court has federal question jurisdiction over this matter.  *See also Duran v. Wells Fargo Bank, N.A.,* 878 F. Supp. 2d 1312, 1315-16 (S.D. Fla. 2012) ("This action was removed to this Court based on federal question jurisdiction, 28 U.S.C. § 1331, because the Complaint alleges a violation of the TCPA. . . . It is established that federal courts have subject matter jurisdiction over TCPA claims.") (internal citation omitted).

10. Moreover, pursuant to 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."  Thus, this Court has federal question jurisdiction.

11. Pursuant to 28 U.S.C. § 1367, this Court also has supplemental jurisdiction over any state law and common law claims, as such claims are related to the TCPA claim over which this Court has original jurisdiction that it forms part of the same case and controversy under Article III of the United States Constitution.  This includes Plaintiff's FTSA claim.

---

[2] Plaintiff asserts a putative class entitled the "Secret Caller Class" based upon alleged violations of the TCPA's implementing regulations, including § 47 C.F.R. 64.1200(d)(4), and bases his claim on purported violations of (and seeks relief under) the TCPA. *See, e.g.,* Ex. A at ¶¶ 8-16, 25, 52.

12.     This Court also has jurisdiction over this case pursuant to the Class Action Fairness Act ("CAFA"), specifically 28 U.S.C. § 1332(d)(2) & (5), which together provide, *inter alia*, that "district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which … any member of a class of plaintiffs is a citizen of a State different from any defendant…" and require that the proposed class must contain at least 100 persons.  *See also Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1163 (11th Cir. 2006) (summarizing CAFA removal requirements); *Miedema v. Maytag Corp.,* 450 F.3d 1322, 1327 (11th Cir. 2006), *abrogated on other grounds by Dudley v. Eli Lilly & Co.*, 778 F.3d 909 (11th Cir. 2014) (same).  As shown below, this case readily meets all of these requirements.

13.     <u>First</u>, the State Court Action is a "class action" under 28 U.S.C. § 1332(d)(2), because Plaintiff seeks to represent two classes of similarly situated individuals pursuant to Florida Rules of Civil Procedure 1.220(b)(2) and (b)(3).  Compl. ¶¶ 52-60; *see also Senger Bros. Nursery, Inc. v. E.I. Dupont de Nemours & Co.,* 184 F.R.D. 674, 682 (M.D. Fla. 1999) ("Florida Rule of Civil Procedure 1.220 is patterned after Federal Rule of Civil Procedure 23.").

14.     <u>Second</u>, there is minimal diversity between Plaintiff and members of the putative class on the one hand and Defendant on the other.  *See, e.g., McDaniel v. Fifth Third Bank*, 568 F.App'x. 729, 731 (11th Cir. 2014) (accepting Plaintiff's allegations as true for purposes of the court's jurisdictional analysis); *Dudley v. Eli Lilly and Co.*, 778 F.3d 909, 911-12 (11th Cir. 2014) (minimal diversity met for CAFA where "any member of the plaintiff class is a citizen of a state different from the state of citizenship of any defendant").  In this regard, Plaintiff alleges that he is a "resident of Palm Beach County, Florida" (Compl. ¶ 3), seeks to certify a Florida-specific class (*id*. ¶ 52), and alleges that Defendant is a "foreign corporation" that "maintains its primary place

of business and headquarters in New York City, New York" (*id*. ¶ 4).

15.     Third, the plausible class number and amount in controversy well exceed the requisite minimums under CAFA based on the face of Plaintiff's Complaint alone. *See, e.g., Roe v. Michelin N. Am., Inc.,* 613 F.3d 1058, 1061-1062 (11th Cir. 2010) ("[C]ourts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements" and may make "reasonable deductions, reasonable inferences, or other reasonable extrapolations from the pleadings to determine whether it is facially apparent that a case is removable."); *Williams v. Best Buy Co., Inc.,* 269 F.3d 1316, 1319 (11th Cir. 2001) (allowing district courts to consider whether it is "facially apparent" from a complaint that the amount in controversy is met); *Fox v. Ritz-Carlton Hotel Co., L.L.C.,* 977 F.3d 1039, 1045 (11th Cir. 2020) ("'If the jurisdictional amount is either stated clearly on the face of the documents before the court, or readily deducible from them, then the court has jurisdiction.'") (quoting *Cappuccitti v. DirecTV, Inc.*, 623 F.3d 1118, 1122 n.8 (11th Cir. 2010)).[3]

16.     In particular, and as noted above, Plaintiff seeks a minimum of $500.00 for each violation, and alleges in his Complaint *inter alia* that: (a) Defendant sent "approximately" thirty-six (36) text messages to him; (b) "the [putative] Class members number in the several thousands, if not more"; (c) Defendant "knowingly" violated the FTSA for treble statutory damages purposes;

---

[3] Defendant does not concede (and indeed disputes) that Plaintiff is entitled to recover any damages, nor is it required to do so for present purposes. *See, e.g., Anderson v. Witco Life Ins. Co.,* 943 F.3d 917, 925 (11th Cir. 2019) ("A defendant seeking to remove a case to federal court must file a notice of removal that includes 'a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.'"); *Mangano v. Garden Fresh Rest. Corp.*, 2015 WL 5953346, at *1 (M.D. Fla. Oct. 13, 2015) ("A Notice of Removal must plausibly allege the jurisdictional amount, not prove the amount."); *Dudley v. Eli Lilly & Co.,* 778 F.3d 909, 913 (11th Cir. 2014) ("'[A] removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it.' [] Moreover, at the jurisdictional stage, 'the pertinent question is what is in controversy in the case, not how much the plaintiffs are ultimately likely to recover.'") (quoting *Pretka v. Kolter City Plaza II, Inc.,* 608 F.3d 744, 751, 754 (11th Cir. 2010)).

and (d) his pleaded claim (*i.e.,* that he allegedly received at least thirty-six violative text messages that were sent by or behalf of Defendant) is "typical" of the putative class members' claims. Compl. ¶¶ 18, 51, 52, 53, 54, 58, 67.

17. Conservatively assuming that "several thousands" of class members, as Plaintiff alleges, means at least 2,000 persons and possibly as many as 3,000 persons ("if not more" according to Plaintiff), the potential number of class members easily exceeds the CAFA threshold of 100. *See* 28 U.S.C. § 1332(d)(5); *see also* BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "several" as meaning "more than one or two but not a lot"); *Laboratoires Perouse, S.A.S. v. W.L. Gore & Assocs., Inc.*, 528 F. Supp. 2d 362, 390 (S.D.N.Y. 2007) (explaining that "several" means "more than two"); *Barrett v. C.O. Matters*, 2015 WL 5881602, at *9, n.9 (M.D. Pa. Sept. 30, 2015) ("Although the word 'several' may sometimes be used to mean 'more than one,' it is typically defined as 'more than two.'") (citing, *inter alia*, *Laboratoires Perouse* and BLACK'S).

18. Further, based on the allegations in the Complaint and reasonable deductions and inferences to be drawn thereon, the alleged amount in controversy in this case exceeds $5,000,000. *See Roe,* 613 F.3d at 1061-1062; *Williams,* 269 F.3d at 1319; *Fox,* 977 F.3d at 1045.

19. For example, conservatively estimating that the putative class members received more than one violative text like Plaintiff allegedly did (*i.e.*, that Plaintiff's claims are truly "typical" of the putative class), and that each putative class member would be entitled to up to $1,500 in trebled statutory damages under the FTSA for each of these alleged "knowing" violations, it is plausible that the amount in controversy alleged in this Complaint exceeds the CAFA minimum threshold (*i.e.*, a minimum of 2,000 putative class members, multiplied by two (2) texts each, multiplied by $1,500 per text in trebled damages equals $6 million). If each class member "typically" received the same number of texts as Plaintiff claims to have received, the

alleged amount in controversy significantly exceeds $5 million (*i.e.*, a minimum of 2,000 putative class members, multiplied by "at least" 36 texts each, multiplied by $1,500 per text in trebled damages equals $108 million).[4] Courts in the Eleventh Circuit and throughout the country routinely calculate the amount in controversy for removal purposes in this fashion.[5] *See, e.g., Doss v. Am. Fam. Home Ins. Co.*, 47 F. Supp. 3d 836, 840 (W.D. Ark. 2014) ("Using the named Plaintiffs as 'typical' class members and multiplying their claims by the number of persons estimated in a class is precisely how courts generally determine the estimated amount in controversy" under CAFA); *Torres v. Countrywide Home Loans, Inc.*, 2014 WL 3742141, at *2 (S.D. Fla. July 29, 2014) (calculating amount in controversy under CAFA in this manner, holding that "if every member of the proposed class has a claim worth the same amount as Plaintiff's, the amount in controversy is easily satisfied"); *Bayberry Lakes Homeowners Ass'n, Inc. v. Boeneman*, 2018 WL 6680993, at *1–2 (M.D. Fla. Sept. 28, 2018) (concluding multiplying the amount of damages of one plaintiff across the putative class clearly shows the damages meet the CAFA jurisdictional threshold) (citing *Pretka*, 608 F.3d at 769)); *Bankhead v. Castle Parking Sols., LLC*, 2017 WL 10562976, at *3 (N.D. Ga. Dec. 1, 2017) (determining amount in controversy based on allegations in the complaint alone, using plaintiff's estimates regarding damages and potential class size as a "base amount"); *Scott v. Ing Clarion Partners, LLC*, 2006 WL 3191184, at *4 (N.D. Ga. Oct. 31, 2006), aff'd, 262 F. App'x 983 (11th Cir. 2008) (calculating the amount in controversy for the

---

[4] If there are truly "several thousands, if not more" putative class members as Plaintiff alleges, these numbers would only increase the amount in controversy in this case exponentially.

[5] Defendant acknowledges that, in *Pretka*, the Eleventh Circuit held that "[t]he typicality element of a class action, by itself, does not allow us to infer that the *amounts* of the named plaintiffs' claims are similar to those of other class members." 608 F.3d at 769 (emphasis in original). Here, the Court need not infer any amounts and need only look to the Complaint. Indeed, according to the Complaint, each putative class member would be entitled to $500 or $1,500 per unlawful text, would had to have received at least one such text be in the class, likely received more than one text, and may have received roughly ***36 texts*** (assuming Plaintiff's claim is truly "typical" as alleged).

class by multiplying amount of plaintiff's alleged damages by size of class).[6] And all this is before possible attorneys' fees (which are available under the FTSA) are taken into account, which may also be considered in determining the amount in controversy here. *See, e.g., Federated Mut. Ins. Co. v. McKinnon Motors,* 329 F.3d 805, 808, n.4 (11th Cir. 2003) (courts may also factor in possible attorneys' fee awards, where permitted by statute, when determining the amount in controversy for removal purposes); *Sheffield Woods at Wellington Condo. Ass'n, Inc. v. Scottsdale Ins. Co.*, 2009 WL 2255219, at *1 (M.D. Fla. July 28, 2009) (finding amount in controversy met, in part based upon plaintiff's claim for fees pursuant to Florida statute). Therefore, this satisfies the third and final CAFA requirement.

20. Given the foregoing, all three of the CAFA removal requirements are met in this case and, as such, removal to this Court is proper under CAFA as well.

### III. Defendant Has Satisfied all the Procedural Requirements for Removal

21. Pursuant to 28 U.S.C. § 1441(a), the present action may be removed to the United States District Court for the Southern District of Florida.

22. Under 28 U.S.C. § 1446(b), Defendant is timely removing this action within 30 days of the purported date of service, which was purportedly on July 18, 2022. *See* Exhibit D, attached.

23. Defendant will promptly serve a copy of this Notice upon all counsel of record in the State Court Action and will file a copy of this Notice with the Clerk of the Court in the State

---

[6] *See also Napoli v. HSBC Mortg. Servs. Inc.*, 2012 WL 3715936, at *2 (D.N.J. Aug. 27, 2012) ("Because Plaintiffs' claims are alleged to be typical of the class, it is reasonable for this Court to simply multiply their purported damages amount by the number of foreclosures alleged in the Complaint.") (collecting cases); *Alper v. Select Portfolio Servicing, Inc.*, 2019 WL 3281129, at *3 (D. Mass. July 19, 2019) ("Because named plaintiffs purport to represent a class, their alleged damages provide an appropriate basis on which to calculate the damages of a typical class member."); *In re Blackbaud, Inc.*, 2021 WL 1940581, at *5 (D.S.C. May 14, 2021) (ruling similarly).

Court Action pursuant to 28 U.S.C. § 1446(d).

24. In accordance with 28 U.S.C. § 1446, copies of all process and papers received by Defendant in the State Court Action have been attached to this Notice.

25. No other defendants have been named in the State Court Action, and therefore, no joinder of additional defendants to this removal is necessary.

26. Therefore, all procedural requirements for removal have been satisfied.

**IV.    Venue**

27. Venue is proper in this District Court pursuant to 28 U.S.C. §1441(a), because this action was brought in the Fifteenth Judicial Circuit Court in and for Palm Beach County, Florida, which is in the same District as the United States District Court for the Southern District of Florida. Venue is also proper in this District under 28 U.S.C. §1391(b), to the extent that Plaintiff alleges that he was "in Florida when he received the above text message calls" and that "Defendant's violative conduct occurred in substantial part in Florida." *See* Exhibit A at ¶ 22.

28. Defendant hereby reserves all rights to assert any available defense or affirmative matter, including, without limitation, motions to dismiss pursuant to Fed. R. Civ. P. 12, as well as to amend or supplement this Notice of Removal.[7]

**V.    Conclusion**

Defendant respectfully requests that this Court proceed with this lawsuit as if it had been originally filed in this Court, and that the Court grant Defendant such other relief to which it is justly entitled.

---

[7] *See also Reynolds v. Behrman Capital IV L.P.*, 988 F.3d 1314, 1323 (11th Cir. 2021) (noting that defendants who remove cases do not waive their right to challenge personal jurisdiction).

|  |  |
|---|---|
| Dated: August 18, 2022 | Respectfully Submitted,<br><br>**MARK MIGDAL & HAYDEN**<br>80 S.W. 8th Street, Suite 1999<br>Miami, Florida 33130<br>Telephone: (305) 374-0440<br><br>By: *s/ Yaniv Adar*<br>  Josh A. Migdal, Esq.<br>  Florida Bar No. 19136<br>  josh@markmigdal.com<br>  Yaniv Adar, Esq.<br>  Florida Bar No. 63804<br>  yaniv@markmigdal.com<br>  eservice@markmigdal.com<br><br>*Attorneys for Defendant* |

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing document (including any attached exhibits and documents) electronically on the Court's CM/ECF docket on August 18, 2022, which served same electronically upon all counsel of record.

*s/ Yaniv Adar*
Yaniv Adar, Esq.