**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

BARRY BERMAN, individually and on behalf
of all others similarly situated,

                Plaintiff,

     v.

RESERVEBAR EXPRESS CORP. d/b/a
MINIBAR DELIVERY,

             Defendant.

**Case No. 9:22-cv-81282-AHS**

## AMENDED CLASS ACTION COMPLAINT

Plaintiff, BARRY BERMAN, on behalf of himself and all others similarly situated, for its Class Action Complaint, sues Defendant, RESERVEBAR HOLDINGS CORP. D/B/A MINIBAR DELIVERY ("Minibar Delivery"), and alleges as follows:

### JURISDICTION, PARTIES, AND VENUE

1.    This is an action asserting a class action claim for monetary and treble damages pursuant to the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059.

2.    This Court maintains jurisdiction over this matter pursuant to Florida Rules of Civil Procedure 1.220(b)(1)(A), 1.220(b)(2), and/or 1.220(b)(3), and Fla. Stat. Chapter 86 and Fla. Stat. § 26.012(2) in consideration of the fact that the aggregate amount in controversy exceeds $30,000.00 exclusive of interest, costs, and attorney's fees.

3.    Plaintiff is, and at all times relevant hereto was, a resident of Palm Beach County, Florida, and for all intents and purposes, considered a "called party" as

defined by Fla. Stat. § 501.059(1)(a) in that he was the regular user of telephone number \*\*\*-\*\*\*-3859 (the "3859 Number") that received Defendant's telephonic sales calls ("calls") and/or text communications ("texts") within Palm Beach County, Florida.

4.     Defendant is, and at all times relevant hereto was, a foreign corporation, and a "telephone solicitor" as defined by Fla. Stat. § 501.059(f). Defendant maintains its primary place of business and headquarters in New York City, New York.

5.     Defendant is subject to personal jurisdiction in Florida because this suit arises out of and relates to Defendant's contacts with this state. Defendant made or caused to be made calls and/or sent texts into Florida without the requisite "prior express written consent" in violation of the FTSA. Plaintiff received such calls and/or texts while residing in and physically present in Florida.

6.     Venue for this action is proper in this Court pursuant to Fla. Stat. § 47.051 because the cause of action accrued in this circuit.

7.     All conditions precedent to the bringing of this action have been performed.


**<u>(SPACE INTENTIONALLY LEFT BLANK)</u>**

## TCPA AND FTSA

8.     "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The federal government receives a staggering number of complaints about robocalls – 3.7 million complaints in 2019 alone. The states likewise field a constant barrage of complaints." *Barr v. American Assoc. of Political Consultants, Inc.*, No. 19-631, 2020 WL 3633780, at *2 (July 6, 2020) (Kavanaugh, J.)

9.     Both the TCPA, 47 U.S.C. § 227 (1991), and the FTSA, F.S.A. 501.059 (July 1, 2021) were created to address the growing concerns of telemarketing calls that began in the 1990s.

10.    Companies were harassing individuals with daily calls through the use of new technology, such as "Predictive Dialers" and "Random or Sequential Number Generators," and people were immediately voicing their frustrations.

11.    The Federal Government enacted the TCPA in 1991 to combat this issue and provide further consumer protection to the general public in a law that remains steadfast 30 years later.

12.    The *Code of Federal Regulations* ("CFR") is the codification of the federal government's rules and regulations published in the *Federal Register*.

13.    Title 47 of the CFR governs all Telecommunications within the United States and is a further attempt by the Federal Government to quell the obscene amount of telemarketing calls that plague people every day.

14.    "The rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report

and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991.'" 47 C.F.R. § 64.1200(e).

15.     Florida also was cognizant of these concerns and enacted the FTSA to further protect its citizens and amended the same, which said amendment took effect July 1, 2021.

16.     Both the TCPA and FTSA provide regulation on who, when, how, and in what manner a telemarketing, debt collection, or sales call may be carried out, which leads us to the reason we are before the Court today.

**(SPACE INTENTIONALLY LEFT BLANK)**

**FACTUAL BACKGROUND**

17.     On or about June 2021 (at a minimum), Defendant began spamming Plaintiff with unsolicited texts to Plaintiff's cellular telephone number.

18.     Since June 2021 (at a minimum), Defendant has spammed Plaintiff with approximately thirty-six ("36") unsolicited texts to Plaintiff's cellular telephone number.

19.     By way of example, below are a few screenshots, from July 2021, October 2021, December 2021 and May 2022 that represent a small fraction of the voluminous amount of the unsolicited texts sent to the Plaintiff by the Defendant.





20.     As demonstrated by the above screenshots, the purpose of Defendant's telephonic sales call was solely to solicit the sale of consumer goods and/or services.

21.     Defendant's texts were transmitted to Plaintiff's cellular telephone, beginning at least in June, 2021, with subsequent almost on a weekly basis throughout 2021, and 2022 up to present day.

22.     Plaintiff was in Florida when he received the above text message calls, and Defendant's violative conduct occurred in substantial part in Florida.

23.     At the time Plaintiff received the text messages, he was the subscriber and sole user of the cellular telephone that received the messages.

24.     Defendant's calls and/or texts constitute telemarketing because they were solely made to encourage the future purchase or investment in property, goods, or services.

25.     Many of Defendant's calls and/or text(s) failed to disclose the name of the individual caller and/or the entity on whose behalf the call was made, and/or a telephone number or address at which the person or entity may be contacted as required pursuant to 47 C.F.R. § 64.1200(d)(4) and 501.059(8)(b).

26.     In fact, Defendant's calls and/or texts concealed the originating telephone number from Plaintiff, in violation of Fla. Stat. §501.059(8).

27.     Moreover, any attempts to return calls to the originating telephone number are not answered during regular business hours, in violation of Fla. Stat. §501.059(8).

28.     At no point in time did Plaintiff provide Defendant with his express written invitation/consent to be contacted by the Defendant.

29.     Upon all information and belief, Defendant caused similar telephonic sales calls and/or texts to be sent to a multitude of individuals residing in the State of Florida.

30.     To transmit the above telephonic sales calls and/or texts, Defendant utilized computer software system that automatically selected and/or dialed Plaintiff's and the Class members' telephone numbers.

31.     The number used by Defendant to transmit the subject text message solicitations (4527) is known as a "short code." Short codes are short digit sequences, shorter than telephone numbers, that are used to address messages in

the Multimedia Messages System and short message service systems of mobile network operators.

32.    Text messages using a short code can only be sent using a computer, and cannot be sent using a standard telephone.

33.    The impersonal and generic nature of Defendant's text messages, coupled with their frequency, demonstrates that Defendant utilized a computer software system that automatically selected and dialed Plaintiff's and the Class members' telephone numbers.

34.    To send the text messages, Defendant used a messaging platform (the "Platform"), which permitted Defendant to transmit blasts of text messages automatically and without any human involvement. The Platform automatically made a series of calls to Plaintiff's and the Class members' stored telephone numbers with no human involvement after the series of calls were initiated utilizing the Platform.

35.    Defendant was not required to and did not need to utilize the Platform to send messages to Plaintiff and the Class members. Instead, Defendant opted to use the Platform to maximize the reach of its text message advertisements at a nominal cost to Defendant.

36.    Defendant would be able to conduct its business operations without sending automated text messages to consumers.

37.    Defendant would be able to send automated text messages to consumers, and in compliance with the FTSA, by securing the proper consent from consumers prior to sending text messages.

38.   Defendant would be able to send text messages to consumers without consent by utilizing a non-automated text messaging system.

39.   Accordingly, it is not impossible for Defendant to comply with the FTSA in the context of transmitting text messages.

40.   The burden and cost to Defendant of securing consent from consumers that complies with the FTSA is nominal.

41.   Compliance with the FTSA will not result in Defendant having to cease its business operations.

42.   Compliance with the FTSA will not result in Defendant having the alter the prices of any goods or services it provides in the marketplace.

43.   Compliance with the FTSA will not force Defendant to seek regulatory approval from the State of Florida before undertaking any type of commercial transaction.

44.   Because a substantial part of Defendant's FTSA violations occurred in Florida, requiring Defendant's compliance with the FTSA will not have the practical effect of regulating commerce occurring wholly outside of Florida.

45.   The Platform has the capacity to select and dial numbers automatically from a list of numbers, which was in fact utilized by Defendant.

46.   The Platform has the capacity to schedule the time and date for future transmission of text messages, which was in fact utilized by Defendant.

47.   The Platform also has an auto-reply function that results in the automatic transmission of text messages.

48.   Plaintiff never provided Defendant with express written consent authorizing Defendant to transmit telephonic sales calls and/or texts to Plaintiff's cellular

telephone number utilizing an automated system for the selection and dialing of telephone numbers.

49.    More specifically, Plaintiff never signed any type of authorization permitting or allowing the placement of a telephonic sales call by text message using an automated system for the selection and dialing of telephone numbers.

50.    Since July 1, 2021, on information and belief, Defendant sent at least 50 text message solicitations to as many consumers in Florida.

51.    Defendant's unsolicited text messages caused Plaintiff harm, including invasion of privacy, aggravation, and annoyance. Defendant's call also inconvenienced Plaintiff, caused disruptions to Plaintiff's daily life, caused Plaintiff to waste time dealing with Defendant's unsolicited text message calls. Additionally, Defendant's unsolicited messages violated Plaintiff's substantive rights under the FTSA from be free from harassing calls like Defendant's.

**(SPACE INTENTIONALLY LEFT BLANK)**

## CLASS REPRESENTATION ALLEGATIONS

52.     Plaintiff brings this lawsuit as a class action on behalf of himself individually and on behalf of all other similarly situated persons as a class action pursuant to Florida Rule of Civil Procedure 1.220(b)(2) and (b)(3).

53.     The "Class" that Plaintiff seeks to represent is defined as:

*No Prior Consent Class*: All persons in Florida who, without prior express invitation/consent:

> 1. were sent a telephonic sales call and/or text(s) regarding Defendant's goods and/or services, and
>
> 2. using the same equipment or the same type of equipment utilized to call and/or text Plaintiff.

*Secret Caller Class*: All persons within the United States who, within the four years prior to the filing of this Complaint, received a telemarketing call and/or one or more text(s) from Defendant, or anyone on Defendant's behalf that did not disclose:

> 1. the name of the individual caller; and/or
>
> 2. the name of the person or entity on whose behalf the call is being made; and/or
>
> 3. a valid, transparent telephone number or address at which the person or entity may be contacted.

53.     Defendant and its employees or agents are excluded from the Class. Plaintiff does not know the exact number of members in the Class but believes the Class members number in the several thousands, if not more.

54.     Numerosity: Plaintiff alleges, on information and belief, that the number of Class members is so numerous that joinder of them is impractical. Upon

information and belief, Defendant, has placed telephonic sales calls and/or texts to telephone numbers belonging to at least 50 persons throughout Florida without their prior express written consent and/or without properly disclosing the identification of the individual caller and/or entity on behalf of whom the call was made. Plaintiff asserts that this issue has spanned the entire four-year statute of limitations and continues presently, and on information indicating that Defendant has a general business practice of failing to the meet the requirements set forth in the FTSA.

55.    The exact number and identities of the Class members are unknown at this time; however, the members of the Class will be easily ascertained through Defendant's records through discovery and will consist of all persons who received a telemarketing call and/or one or more texts from Defendant, or anyone on Defendant's behalf, without providing prior express written consent and/or the proper requisite disclosures as required by law.

56.    <u>Commonality</u>: There are questions of law and fact that are common to all members of the Class. These issues of commonality are primary and supersede the necessitation of the resolution of any issues involving only the individual members of the Class. The principal common issues include:

1.  Whether Defendant initiated telephonic sales calls and/or texts to Plaintiff and the Class members;

2.  Whether Defendant can meet its burden of showing that it had prior express written consent to make such calls;

3.  Whether Defendant violated F.S.A. 501.059 (July 1, 2021);

4.  Whether Defendant's conduct was knowing and willful;

5. And, whether Defendant is liable for damages, and the amount of such damages.

57.     The common questions in this case can have common answers. If Plaintiff's claim that Defendant routinely transmits telephonic sales calls and/or texts without prior express written consent is accurate, Plaintiff and the Class members will have similar, if not identical, claims and/or damages capable of being efficiently adjudicated and administered in this case.

58.     Typicality: The claims of the Class Representative are typical of the claims that would be asserted by other members of the Class in that, in proving its claims, Plaintiff will prove the claims of all Class members. Plaintiff, and each Class member, is an individual that either has a phone number with a Florida Area Code and/or received one or more the Defendant's telemarketing calls and/or texts while being present within the State of Florida without having provided prior express written consent to the Defendant and/or with Defendant's telemarketing calls and/or texts.

59.     Adequacy: The Class Representative is an individual both residing in and maintaining a phone number with an area code in the State of Florida, which has no interest that conflicts with, or is otherwise antagonistic to, the interests of other Class members. Plaintiff will fairly and adequately protect and represent the interests of each member of the Class. Additionally, the Class Representative is fully aware of its responsibility as Class Representative and has retained experienced counsel fully capable of, and intent upon, vigorously pursuing the action. Class counsel has extensive experience in class claims, high volume representation, and varying forms of litigation.

60.     The questions of law or fact common to the Class Representative's claims and the claim of each member of the Class as described above predominate over any questions of law or fact affecting only individual members of the Class. Moreover, class representation is clearly superior to other available methods for resolving the Plaintiff's and Class members' claims. Judicial economy is well served by concentrating all the Class members' claims in one forum in one proceeding. No undue management difficulties mitigate against class action treatment of this case. Additionally, Defendant's actions are generally applicable to the Class, thereby determining applicable relief to the entire Class particularly appropriate.

**<ins>(SPACE INTENTIONALLY LEFT BLANK)</ins>**

## **COUNT I: VIOLATION OF FLA. STAT. § 501.059(8)(a)**
## **(On Behalf of Plaintiff and the No Prior Consent Class)**

61.     Plaintiff re-alleges paragraphs 1 – 60 as if specifically alleged herein.

62.     As previously discussed, the FTSA was enacted to regulate all forms of telephone solicitation due to the increasing number of telemarketing calls and/or texts that occur to callers that reside within the State of Florida every single day.

63.     The FTSA clearly states that no person and/or entity may "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called **without the prior express written consent** of the called party." (Emphasis Added) Fla. Stat. § 501.059(8)(a).

64.     The FTSA states, a "'Telephonic Sales Call' means a telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(j).

65.     "'Prior express written consent' means a written agreement that:

   1.   Bears the signature of the called party;

   2.   Clearly authorizes the person making or allowing the placement of a telephonic sales call by telephone call, text message, or voicemail transmission to deliver or cause to be delivered to the called party a telephonic sales call using an automated system for the selection or dialing

of telephone numbers, the playing of a recorded message when a connection is completed to a number called, or the transmission of a prerecorded voicemail;

3.   Includes the telephone number to which the signatory authorizes a telephonic sales call to be delivered; and

4.   Includes a clear and conspicuous disclosure informing the called party that:

> a.   By executing the agreement, the called party authorizes the person making or allowing the placement of a telephonic sales call to deliver or cause to be delivered a telephonic sales call to the called party using an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called; and

> b.   He or she is not required to directly or indirectly sign the written agreement or to agree to enter into such an agreement as a condition of purchasing any property, goods, or services."

Fla. Stat. § 501.059(1)(g).

66.   Prior to initiating its telemarketing calls and/or texts, Defendant, was required to, however, never obtained prior express written consent/invitation from Plaintiff and the Class members.

67.   Defendant, in clear violation of the FTSA, made and/or knowingly allowed the telephonic sales calls and/or to Plaintiff and the Class members to be made utilizing an automated system for the selection or dialing of telephone numbers.

## COUNT II: VIOLATION OF FLA. STAT. § 501.059(2)
### (On Behalf of Plaintiff and the Florida Secret Caller Class)

68.     Plaintiff re-alleges paragraphs 1 – 60 as if specifically alleged herein.

69.     Under the FTSA ". . . [a]ny telephone solicitor who makes an unsolicited telephonic sales call to a residential, mobile, or telephonic paging device telephone number shall identify himself or herself by his or her true first and last names and the business on whose behalf he or she is soliciting immediately upon making contact by telephone with the person who is the object of the telephone solicitation." Fla. Stat. §501.059(2).

70.     In violation of the FTSA, Defendant made and/or caused to be made unsolicited telephone sales calls to Plaintiff, and other members of the Florida Secret Caller Class without identifying the telephone solicitor's true first and last names, as required by Fla. Stat. §501.059(2.

71.     As a result of Defendant's conduct, and pursuant to §501.059(10)(a) of the FTSA, Plaintiff and Florida Secret Caller Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Class members are entitled to an injunction against future calls. Id.

**COUNT III: VIOLATION OF FLA. STAT. §
501.059(8)(b)
(On Behalf of Plaintiff and the Florida Secret
Caller Class)**

72.   Plaintiff re-alleges paragraphs 1 – 60 as if specifically alleged herein.

73.   Under the FTSA ". . . [i]t shall be unlawful for any person who makes a
      telephonic sales call or causes a telephonic sales call to be made to fail to
      transmit or cause not to be transmitted the originating telephone number
      and, when made available by the telephone solicitor's carrier, the name of
      the telephone solicitor to any caller identification service in use by a
      recipient of a telephonic sales call. However, it is not a violation to
      substitute, for the name and telephone number used in or billed for making
      the call, the name of the seller on behalf of which a telephonic sales call is
      placed and the seller's customer service telephone number, which is
      answered during regular business hours." Fla. Stat. §501.059(8)(b).

74.   In violation of the FTSA, Defendant made and/or caused to be made
      unsolicited telephone sales calls to Plaintiff, and other members of the
      Florida Secret Caller Class without identifying the originating telephone
      number, as required by Fla. Stat. §501.059(8)(b).

75.   In further violation of the FTSA, §501.059(8)(b), any attempts to return
      calls to the originating telephone number used by Defendant are not
      answered during regular business hours, causing harm to Plaintiff and
      other members of the Florida Secret Caller Class.

76.     As a result of Defendant's conduct, and pursuant to §501.059(10)(a) of the FTSA, Plaintiff and Florida Secret Caller Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Class members are entitled to an injunction against future calls. *Id*.

**WHEREFORE**, Plaintiff, on behalf of itself and the Class Members, respectfully requests this Court order the following relief against the Defendant:

a.     Finding that this action satisfies the prerequisites for maintenance as a Class Action set forth in Florida Rules of Civil Procedure 1.220(b)(1)(A) and/or 1.220(b)(2);

b.     Designating Plaintiff as Representative of the Class and its counsel as Class Counsel;

c.     Entering a judgment in favor of Plaintiff and the Class members and against Defendant as follows:

i. Certifying that this case is properly maintainable as a Class Action under Florida Rules of Civil Procedure 1.220(b)(1)(A) and/or 1.220(b)(2);

ii. Finding Defendant in violation of § 501.059(8)(a) of the FTSA, awarding each Class Member a minimum of $500.00 in statutory damages for each violation pursuant to Fla. Stat. § 501.059(10)(a), and, pursuant to Fla. Stat. § 501.059(10)(b), up to $1,500.00 for every violation where the Court finds that the Defendant willfully or knowingly violated § 501.059(8)(a) of the FTSA;

iii. Finding Defendant in violation of § 501.059(2) of the FTSA, awarding each Class Member a minimum of $500.00 in statutory damages for each violation pursuant to Fla. Stat. § 501.059(10)(a), and, pursuant to Fla. Stat. § 501.059(10)(b), up to $1,500.00 for every violation where the Court finds that the Defendant willfully or knowingly violated § 501.059(2) of the FTSA;

iv. Finding Defendant in violation of § 501.059(8)(b) of the FTSA, awarding each Class Member a minimum of $500.00 in statutory damages for each violation pursuant to Fla. Stat. § 501.059(10)(a), and, pursuant to Fla. Stat. § 501.059(10)(b), up to $1,500.00 for every violation where the Court finds that the Defendant willfully or knowingly violated § 501.059(8)(b) of the FTSA;

v. Requiring Defendant to pay Plaintiff's reasonable attorneys' fees and costs pursuant to § 501.059(11)(a) and pursuant to §501.625 of the FTSA;

vi. Enjoining Defendant from any further communications and or solicitations with the Plaintiff; and

vii.  Granting such further relief as the Court deems just and equitable

PLAINTIFF, ON BEHALF OF ITSELF AND THE CLASS MEMBERS, DEMANDS TRIAL BY JURY ON ALL ISSUES TRIABLE.

Filed this Wednesday, November 2, 2022.

**DEMESMIN & DOVER, PLLC**
*Attorneys for Plaintiff*
1650 SE 17th Street, Suite 100
Fort Lauderdale, Florida 33316
Office (866) 954-6673
Facsimile (954) 916-8499
Spam-Pleadings@attorneysoftheinjured.com
Jdover@attorneysoftheinjured.com

By: */s/ Jeremy Dover*
JEREMY DOVER, ESQ.
FBN: 110737